```
                    UNITED STATES DISTRICT COURT
                  SOUTHERN DISTRICT OF WEST VIRGINIA
                             AT CHARLESTON
```

DIANA MEY, individually and on
behalf of a class of all
persons and entities similarly situated,

      Plaintiff,

v.                                        Civil Action No. 2:12-1721

HONEYWELL INTERNATIONAL, INC. and
ISI ALARMS NC, INC.,

      Defendants.

## MEMORANDUM OPINION AND ORDER

Pending is the motion to dismiss filed July 2, 2012, by Honeywell International, Inc. ("Honeywell").

### I.

At the heart of this action is the appropriate reach and interpretation of the Telephone Consumer Protection Act of 1991 ("TCPA" or "Act"), 47 U.S.C. § 227. Some background about the Act is helpful prior to considering the circumstances of this case.

The TCPA was enacted in response to "[v]oluminous consumer complaints about abuses of telephone technology." Mims v. Arrow Financial Services, LLC, 132 S. Ct. 740, 744 (2012). In Mims, the Supreme Court summarized Congress' findings on the matter:

> In enacting the TCPA, Congress made several findings . . . . "Unrestricted telemarketing," Congress determined, "can be an intrusive invasion of privacy." TCPA, 105 Stat. 2394, note following 47 U.S.C. § 227 (Congressional Findings) (internal quotation marks omitted). In particular, Congress reported, "[m]any consumers are outraged over the proliferation of intrusive, nuisance [telemarketing] calls to their homes." Ibid. (internal quotation marks omitted). "[A]utomated or prerecorded telephone calls" made to private residences, Congress found, were rightly regarded by recipients as "an invasion of privacy." Ibid. (internal quotation marks omitted).

Id. at 745. The unanimous decision in Mims also isolated four practices that the TCPA was designed to halt:

> [T]he TCPA principally outlaws four practices. First, the Act makes it unlawful to use an automatic telephone dialing system [("autodialer")] or an artificial or prerecorded voice message, without the prior express consent of the called party, to call any . . . cellular telephone, or other service for which the receiver is charged for the call. See 47 U.S.C. § 227(b)(1)(A). Second, the TCPA forbids using artificial or prerecorded voice messages to call residential telephone lines without prior express consent. § 227(b)(1)(B). Third, the Act proscribes sending unsolicited advertisements to fax machines. § 227(b)(1)(C). Fourth, it bans using automatic telephone dialing systems to engage two or more of a business' telephone lines simultaneously. § 227(b)(1)(D).

Id. at 745.

The TCPA is a remedial statute and thus entitled to a broad construction. See, e.g., Holmes v. Back Doctors, Ltd., 695 F. Supp.2d 843, 854 (S.D. Ill. 2010) ("It is true that . . . the TCPA is a remedial statute."). As such, it "should be liberally construed and should be interpreted (when that is possible) in a manner tending to discourage attempted evasions by wrongdoers." Scarborough v.

Atlantic Coast Line R. Co., 178 F.2d 253, 258 (4th Cir. 1950). At the same time, a remedial purpose "will not justify reading a provision 'more broadly than its language and the statutory scheme reasonably permit.'" Touche Ross & Co. v. Redington, 442 U.S. 560, 578 (1979) (quoting SEC v. Sloan, 436 U.S. 103, 116 (1978)).

With these general principles in mind, the court turns to the circumstances of this case.

## II.

Plaintiff Diana Mey is a West Virginia citizen. Honeywell is a citizen of Delaware and New Jersey. Defendant ISI Alarms NC, Inc. ("ISI"), is a North Carolina corporation.[1] Ms. Mey listed her residential and mobile telephone numbers in the National Do Not Call Registry managed by the Federal Trade Commission. It is undisputed that she qualifies as a protected party under the Telephone Consumer Protection Act of 1991 ("TCPA"), 47 U.S.C. § 227.

Honeywell markets and distributes products using a distribution network of authorized dealers. It states on that portion of its website to independent dealers that, "Our success is

---

[1] Secure Home Technologies, Inc. was also originally named in the complaint. On July 31, 2012, it was voluntarily dismissed.

3

only possible with your success. You are our business." (Compl. ¶ 22). It further states the benefits of independent dealers "[p]artnering" with Honeywell. (<u>Id.</u> ¶ 24). It allows its authorized dealers to market Honeywell products and services. It compensates authorized dealers through a structure of commission payments based upon the amount of product and services sold.

Respecting the relationship between Honeywell and its dealers, it is alleged that Honeywell is engaged in a partnership and contractual association with its authorized dealers to carry out a single business enterprise for profit. This partnership or joint venture includes the combination of the participants' property, money, effects, skill, and knowledge. During the partnership or joint venture Honeywell delegated marketing authority to its authorized dealers. Consequently, it either knew or should have known that its authorized dealers were engaged in illegal telemarketing. Irrespective of that fact, once it obtained actual knowledge of the unlawful practices, it failed to take the steps necessary to halt the misconduct.

From March 7 through April 25, 2012, Ms. Mey received at least 18 telemarketing calls "from or on behalf of Honeywell and its authorized dealers, including . . . ISI." (<u>Id.</u> ¶ 35). These calls included those placed to Ms. Mey's residential phone line, her mobile phone line, and to a mobile phone line owned by her but used as well

by her son. All of the lines appeared on the National Do Not Call Registry. The calls were accomplished by live telemarketers and "automatic telephone dialing system[s] [('autodialer')]" delivering a prerecorded message.[2] During several of the calls, Ms. Mey learned that ISI was the caller, while other calls were placed by different unidentified Honeywell dealers. On more than one occasion a telemarketer identified him or herself as a Honeywell representative or that of "ISI Honeywell." (Id. ¶ 40).

The calls were made for Honeywell's benefit and on its behalf. Ms. Mey also asserts that Honeywell is legally responsible for the violations inasmuch as the calls were made by Honeywell's agents or by third-parties engaged in a joint venture with it.

Other consumers have complained about Honeywell's telemarketing practices. The Federal Trade Commission has recorded over 300 consumer complaints relating to prerecorded telemarketing calls conducted by Honeywell's authorized dealers on behalf of Honeywell.

On April 30, 2012, Ms. Mey instituted a putative class action against Honeywell and ISI in the Circuit Court of Kanawha

---

[2] An autodialer is defined by the TCPA as equipment used "to store or produce telephone numbers to be called, using a random or sequential number generator . . . [that then is used] to dial such numbers." 47 U.S.C. 227(a)(1)(A) and (B).

County.  Her complaint asserts three TCPA claims as follows: (1) soliciting by telephone, or having others do so on their behalves, Ms. Mey's numbers listed on the National Do Not Call Registry, in violation of 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(c)(2) (Count One), (2) using prerecorded or autodialer calls to contact, or having others do so on their behalves, nonconsenting residential telephone users, in violation of 47 U.S.C. § 227(b)(1)(B) and 47 C.F.R. § 64.1200(a)(2)(Count Two), and (3) initiating telemarketing calls to mobile phones, or having others do so on their behalves, by use of an ("autodialer") or prerecorded voice, in violation of 47 U.S.C. § 227(b)(i) and 47 C.F.R. § 64.1200(a)(1)(iii) (Count Three).[3]  Ms. Mey seeks injunctive relief barring future TCPA violations, along with statutory damages of $500 for each negligent violation of the TCPA and $1,500 for each knowing violation.

On July 2, 2012, Honeywell moved to dismiss.  It asserts that section 227 does not create liability for a person or entity who did not initiate or make the telephone call at issue, and the Federal Communications Act, in which the TCPA is found, does not create vicarious or agency liability for entities who do not use the telephone.

---

[3] Count Four is simply a request for injunctive relief to halt alleged future TCPA violations.

II.

A. Governing Standard

Federal Rule of Civil Procedure 8(a)(2) requires that a pleader provide "a short and plain statement of the claim showing . . . entitle[ment] to relief." Fed. R. Civ. P. 8(a)(2); Erickson v. Pardus, 127 S. Ct. 2197, 2200 (2007). Rule 12(b)(6) correspondingly permits a defendant to challenge a complaint when it "fail[s] to state a claim upon which relief can be granted . . . ." Fed. R. Civ. P. 12(b)(6).

The required "short and plain statement" must provide "'fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 545 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957), overruled on other grounds, Twombly, 550 U.S. at 563); see also Anderson v. Sara Lee Corp., 508 F.3d 181, 188 (4th Cir. 2007). In order to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 570); see also Monroe v. City of Charlottesville, 579 F.3d 380, 386 (4th Cir. 2009).

Application of the Rule 12(b)(6) standard requires that the court "'accept as true all of the factual allegations contained in the complaint . . . .'" Erickson, 127 S. Ct. at 2200 (quoting Twombly, 127 S. Ct. at 1965); see also South Carolina Dept. Of Health And Environmental Control v. Commerce and Industry Ins. Co., 372 F.3d 245, 255 (4th Cir. 2004) (quoting Franks v. Ross, 313 F.3d 184, 192 (4th Cir. 2002)). The court must also "draw[] all reasonable . . . inferences from th[e] facts in the plaintiff's favor . . . ." Edwards v. City of Goldsboro, 178 F.3d 231, 244 (4th Cir. 1999).

B. Analysis

The statutory and regulatory language supporting each of Ms. Mey's claims appears below:

Count One: 47 U.S.C. § 227(c)[4] and 47 C.F.R. § 64.1200(c)(2)

> 47 U.S.C. § 227(c)(5): A person who has received more than one telephone call within any 12-month period <u>by or on behalf of the same entity</u> in violation of the regulations prescribed under this subsection may . . . [bring an appropriate action(s), PROVIDED that] . . . [i]t shall be an affirmative defense in any action brought under this paragraph that the defendant has established and implemented, with due care, reasonable practices and

---

[4] It is presumed that counsel wished to reference section 227(c)(5), which is the TCPA provision authorizing a private right of action. The balance of the subsection addresses rulemaking proceedings, creation of the National Do Not Call Registry, regulatory authority, and other administrative measures.

procedures to effectively prevent telephone solicitations in violation of the regulations prescribed under this subsection. If the court finds that the defendant **willfully or knowingly violated the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph.** (emphasis added).

47 C.F.R. § 64.1200(c)(2): No person or entity shall initiate any telephone solicitation to . . . [a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government. . . . Any person or entity making telephone solicitations (<u>or on whose behalf telephone solicitations are made</u>) will not be liable for violating this requirement if [it can demonstrate the violation was an error, along with other requirements]. (emphasis added)

<u>Count Two</u>: 47 U.S.C. § 227(b)(1)(B) and 47 C.F.R. § 64.1200(a)(2)

47 U.S.C. § 227(b)(1)(B): It shall be unlawful for any person within the United States . . . to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party . . . .

47 C.F.R. § 64.1200(a)(2): No person or entity may . . . [i]nitiate, <u>or cause to be initiated</u>, any telephone call that includes or introduces an advertisement or constitutes telemarketing, using an . . . [autodialer] or an artificial or prerecorded voice . . . . (emphasis added).

<u>Count Three</u>: 47 U.S.C. § 227(b)(i)[5] and 47 C.F.R. § 64.1200(a)(1)(iii)

---

[5] Code section 227(b) does not contain a subdivision (i). It appears Ms. Mey intended to reference Code section 227(b)(1)(A)(iii).

> 47 U.S.C. § 227(b)(1)(A)(iii): It shall be unlawful for any person within the United States . . . to make any call . . . using any . . . [autodialer] or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service. . . or any service for which the called party is charged for the call . . . .
>
> 47 C.F.R. § 64.1200(a)(1)(iii): No person or entity may . . . initiate any telephone call . . . using an . . . [autodialer] or an artificial or prerecorded voice . . . [t]o any telephone number assigned to a . . . cellular telephone service . . . or any service for which the called party is charged for the call.

It appears that some of the statutory and regulatory provisions above contemplate third-party, or "on behalf of," liability for commercial entities that retain telemarketers to advertise their products or services. Apart from the statutory language, however, such remote liability is not uncommon.

In <u>Meyer v. Holley</u>, 537 U.S. 280 (2003), the Supreme Court addressed whether a provision of The Fair Housing Act, which forbids racial discrimination in the sale or rental of a dwelling, imposes personal liability without fault upon an officer or owner of a residential real estate corporation for the unlawful activity of the corporation's employee or agent. The Fair Housing Act, like the TCPA, said nothing respecting the matter of vicarious liability. Answering the question presented in the affirmative, Justice Breyer observed as follows for the unanimous Court:

> This Court has noted that an action brought for compensation by a victim of housing discrimination is, in

> effect, a tort action. And the Court has assumed that, when Congress creates a tort action, <u>it legislates against a legal background of ordinary tort-related vicarious liability rules and consequently intends its legislation to incorporate those rules</u>. . . .
>
> It is well established that <u>traditional vicarious liability rules</u> ordinarily make principals or employers vicariously liable for acts of their agents or employees in the scope of their authority or employment.

<u>Id.</u> at 285 (emphasis added) (citations omitted).

There is district court authority for applying the rule in <u>Meyer</u> to the TCPA setting. <u>See</u>, <u>e.g.</u>, <u>Thomas v. Taco Bell Corp.</u>, 879 F. Supp.2d 1079, 1084 (C.D. Cal. 2012) ("Absent a clear expression of Congressional intent to apply another standard, the Court must presume that Congress intended to apply the traditional standards of vicarious liability with which it is presumed to be familiar, including the alter ego and agency doctrines"); <u>Accounting Outsourcing, LLC. v. Verizon Wireless Personal Communications, L.P.</u>, 329 F. Supp.2d 789, 806 (M.D. La. 2004)("According to the Supreme Court in <u>Meyer v. Holley</u>, congressional tort actions implicitly include the doctrine of vicarious liability, whereby employers are liable for the acts of their agents and employees. In <u>Meyer</u>, the Supreme Court applied the doctrine of vicarious liability to the Fair Housing Act, despite the Congress's silence on the subject. In this case, Congress did not explicitly apply the doctrine of vicarious liability to the TCPA. Nevertheless, given the Supreme Court's

11

ruling in Meyer, this court finds that persons of common intelligence would know that the TCPA applies to advertisers.").

According to the well-settled legal background in existence at the time of the TCPA's enactment, an agency relationship arises within a partnership or joint venture:

> With respect to the power of one joint venturer to bind the others, a joint venture generally creates a mutual agency similar to that which prevails in a partnership . . . . " Unlike cotenants, there is a confidential and fiducial relationship between co-adventurers. Each member acts individually and as agent for other members within the general scope of the enterprise. Being closely akin to a partnership, the law of partnership and principal and agent underlies the conduct of the venture, and governs the rights and liabilities of co-adventurers, and of third parties as well."

12 Richard A. Lord, Williston on Contracts § 35:75 (4th ed. elec. 2012) (footnotes omitted) (citation omitted); see also 46 Am. Jur. 2d Joint Ventures § 34 ("The law of partnership and of principal and agent underlies the conduct of a coadventurer and governs the rights and liabilities of coadventurers and third parties as well. In accordance with the general rule that each member of a joint venture is deemed to be the agent of the other when acting in furtherance of the common objective, coventurers are agents of each other as to third parties for all acts within the scope of the enterprise if the joint venturer has authority to act.") (footnotes omitted); 14 Lee S. Kreindler et al., N.Y. Prac., New York Law of Torts § 9:1("It is a basic principle of tort law that a principal is vicariously liable

for the torts of its agents committed in the course or scope of the agency or employment. Similarly, principles of vicarious liability may be invoked to hold a general partner or joint venturer liable for torts committed by other general partners or joint venturers.") (footnotes omitted).

These familiar rules of vicarious liability, along with the analysis found in <u>Meyer</u>, are significant here. Ms. Mey asserts that Honeywell allows its authorized dealers to market Honeywell products and services. She also claims that authorized dealer compensation includes a structure of commission payments based upon the amount of products and services sold. Respecting the business relationship between Honeywell and the authorized dealers, she notes that there exists either a partnership or a contractual association to carry out a single business enterprise for profit. The asserted business combination includes the combination of the participants' property, money, effects, skill, and knowledge, with the specific delegation by Honeywell of its marketing authority to its authorized dealers. There are other allegations to similar effect, noting Honeywell's statement to its authorized dealers that its "success is only possible with . . . [the authorized dealers'] success" and that the authorized dealers are Honeywell's "business." (Compl. ¶ 22).

Apart from vicarious liability, however, it appears that Ms. Mey alleges that Honeywell is directly at fault. As noted, from March 7 through April 25 2012, Ms. Mey received at least 18 telemarketing calls "from or on behalf of Honeywell and its authorized dealers, including ISI." (Id. ¶ 35). On more than one occasion, a telemarketer identified him or herself as a Honeywell representative or that of "ISI Honeywell." (Id. ¶ 40).

Under these circumstances, the court concludes that Ms. Mey has minimally alleged a plausible claim against Honeywell. It is, accordingly, ORDERED that Honeywell's motion to dismiss be, and it hereby is, denied.

The Clerk is requested to transmit this written opinion and order to counsel of record and to any unrepresented parties.

DATED: March 29, 2013

_____
John T. Copenhaver, Jr.
United States District Judge